**Richmond**

GLORIA CIRA DELAMA COE

V.

PAUL LEROY COE, JR.

June 17, 1983.

Record No. 810141.

Present: Cochran, Poff, Compton, Stephenson, Russell, and Thomas, JJ., and Harrison, Retired Justice.

*Marged G. Harris (William A. Hunt*, on brief), for appellant.
*Halbert T. Dail (Dail and Haverson*, on brief), for appellee.

HARRISON, R.J., delivered the opinion of the Court.

Paul Leroy Coe, Jr., plaintiff, filed a bill of complaint against his wife, Gloria Cira DeLama Coe, defendant, seeking a divorce *a mensa et thoro* on the ground of constructive desertion. Defendant answered and filed a cross-bill alleging cruelty and desertion by plaintiff. Pending trial, the Court, on January 8, 1980, awarded her $450 per month for the support and maintenance of their

three children and $650 per month for her support and maintenance.

Thereafter, and prior to the taking of testimony, the husband was permitted to amend his bill to allege that his wife had committed adultery with Charles Madden on April 8, 9, and 10, 1980. Defendant answered and denied the allegation. Testimony was taken, and on October 24, 1980, the court below dismissed defendant's cross-bill, granted plaintiff a divorce from defendant on the ground of adultery, awarded custody of the children to defendant, denied defendant spousal support, and ordered plaintiff to pay to defendant child support in the amount of $150 per month per child. Defendant assigns error to all provisions of the decree other than those concerning child custody and child support.

The undisputed evidence is that the parties were married in Long Island, New York, on September 9, 1967, and cohabited as man and wife, except for a brief period of separation, until July 15, 1979. The three children born of this union are ages 15, 13, and 8. At the time of their marriage, plaintiff was a graduate student. After he received his Ph.D. Degree the parties moved to Virginia in January 1973, and have been residents of York County since that time. Plaintiff is employed by NASA as an aeronautical engineer.

It is unnecessary to recite the various acts which each party claims constitute cruel and improper conduct on the part of the other. For a period of time their marriage had been deteriorating, and their relationship had become strained. The wife recites numerous incidents, arguments, and episodes, both in public and in private, which were embarrassing and humiliating to her. She accused the husband of being insensitive, of using coarse and abusive language, and of having violent outbursts of temper. She cited several instances during which she said he physically abused her. The husband in turn denied that he had ever made physical attacks on his wife. He admitted that their marriage had been disintegrating over a period of time prior to an episode which occurred on July 15, 1979. He said that on that day he returned home to find his wife angry, violent, swearing, and screaming. He said she punched him, spit on him, and threw his clothes out of the house. The wife denied the husband's testimony. She said plaintiff was supposed to have gone on a weekend fishing trip with a friend; that when he returned on Sunday evening, he walked in the house and "appeared very cocky"; that she confronted him with the fact

that she had learned he did not go fishing; that she felt their marriage was in very deep trouble; and that she wanted him to sit down and talk. She said that his response was "Bitch, you have five minutes to talk, and then I am going to bed." A violent argument ensued, during which the wife claims that the plaintiff twisted her neck, pressed her against the wall, and punched her. Defendant said that on this occasion her husband told her he wanted a divorce.

Assuming, but not deciding, that the various episodes, incidents, and conduct of plaintiff constituted cruelty to defendant, her testimony of those acts is not corroborated. Plaintiff denies all acts of cruelty on his part. The only supporting evidence introduced by defendant was that of a neighbor, her family physician, and a clinical psychologist whom she consulted about her problems. These witnesses knew of her mental and physical condition and that she had marital trouble, but none had any personal knowledge of the various acts of cruelty alleged by defendant.

■ A fault divorce cannot be granted merely because a husband and wife are unable to live together in peace and harmony. While it is apparent from the testimony of both plaintiff and defendant that a deplorable marital situation had developed, that does not warrant the granting of a divorce upon insufficient evidence or upon uncorroborated evidence where corroboration is required. *Johnson* v. *Johnson*, 213 Va. 204, 211, 191 S.E.2d 206, 211 (1972). Accordingly, we find no error in the action of the court in dismissing defendant's cross-bill.

■ Defendant further says that the court erred in permitting her husband to amend his bill of complaint to allege adultery. She points to the fact that the claimed acts occurred approximately nine months after the parties had separated and after the marriage had been irretrievably broken. However, she admits that "[i]f one relies solely on the rule of *stare decisis*, and automatically applies the ruling from *Rosenberg* v. *Rosenberg*, 210 Va. 44, 168 S.E.2d 251 (1969), to this case, this question would be answered in the negative." She argues that there are compelling policy reasons why any act by either party occurring after the marital relationship has been destroyed, and the parties are separated, should not be permitted to be introduced into the case. We decline defendant's invitation to overrule *Rosenberg*. Aside from the fact that the General Assembly has had numerous opportunities to respond to our ruling in *Rosenberg*, the policy of the Common-

wealth, as enunciated by the legislature, is clearly consistent with that case. The statutorily mandated waiting period in Code § 20-121 between the time separation occurs and the time a final decree of divorce can be granted is designed primarily to give the parties an opportunity to reconcile and to determine if they desire the separation to be final. The commission of adultery during that period by either party to a marriage in trouble is the one act most likely to frustrate and prevent a reconciliation. Further, Code § 20-117 provides as follows:

> The granting of a divorce from bed and board shall not be a bar to either party obtaining a divorce from the bonds of matrimony on any ground which would justify a divorce from the bonds of matrimony if no divorce from bed and board had been granted, unless the cause for absolute divorce was existing and known to the party applying for the divorce from the bonds of matrimony before the decree of divorce from bed and board was entered. . . .

In the instant case it is admitted that the adultery, the alleged ground for absolute divorce, did not exist or was not known to the plaintiff when he filed his suit. Further, there is no question of plaintiff's diligence. He sought leave to amend as soon as he learned of the specific acts of adultery alleged. Again, as in *Rosenberg*, plaintiff's original bill prayed for a divorce on the grounds of constructive desertion. His amended bill did not state "a completely new case." It merely added an additional ground while asking for the same relief.

In *Roberts v. Roberts*, 223 Va. 736, 292 S.E.2d 370 (1982), we found that the trial court had not abused its discretion in refusing to permit an amendment charging adultery. However, there, the court was free to conclude that the motion to amend was not made in good faith, it appearing that the first act of alleged adultery occurred three days after the motion for leave to amend charging adultery was filed.

 Defendant further argues that the court erred in holding that plaintiff's evidence was sufficient to establish adultery on her part, and in denying spousal support.

Plaintiff testified that some time during the months of February and March, 1980, he learned from a neighbor and from his children that his wife was being visited by some man. He said that on

one occasion he attended a basketball game and observed that his wife was there with Charles Madden. He said that he saw Madden's automobile, a late model blue Oldsmobile, parked in the driveway of his wife's home. Plaintiff apparently conducted surveillance of the house approximately five times and, as a result of what he observed, employed a private detective to determine what activities were being engaged in by his wife and Madden.

Edmond Robertson testified that he operated a licensed private investigating service. He said that he was retained by Mr. Coe on March 5, 1980, to "investigate suspected adulterous conduct on the part of his wife, Mrs. Gloria D. Coe, of 303 Laurel Path Road, Yorktown." He was provided with photographs and physical descriptions for identification purposes. Mrs. Coe's automobile was identified as a beige Plymouth with Virginia license URE-273.

The detective said that on Wednesday, April 9, 1980, at 3:16 a.m., he saw Mrs. Coe's Plymouth automobile parked in the parking area of Young's Mill Apartment complex in a "guest" spot between apartments 544 and 546. Robertson said that parked in front of apartment 552 was an Oldsmobile automobile bearing Virginia license NPZ-794, listed by the Virginia Division of Motor Vehicles as belonging to Charles Madden, whose address was shown to be 552 Young's Mill Lane, Newport News, Virginia; that all lights were out in apartment 552; and that the apartment has a front entrance, and also a rear entrance that leads into a ravine in a wooded area. Robertson continued his surveillance of apartment 552 until 7:13 a.m., at which time an automobile with Virginia license MGL-316 pulled into the parking area. He said a white male came out of apartment 552, got into that automobile, and the parties drove away; and that at 8:09 a.m., Mrs. Coe came out of the apartment and drove away in her Plymouth automobile. After she left, the detective knocked loudly at the door of apartment 552 but received no response. He then drove to a nearby telephone and dialed Madden's telephone number listed in the phone book as 874-7849. He said the phone listing showed Madden's address as Apartment 552, Young's Mill Lane. Robertson testified that he dialed on three different occasions but received no answer. He concluded that no one had been in the apartment other than its occupant Madden and Mrs. Coe, his guest.

On Thursday, April 10, 1980, at 2:58 a.m., Robertson again observed both Mrs. Coe's Plymouth automobile and Madden's

Oldsmobile automobile parked in front of Madden's apartment in approximately the same places the vehicles were parked the night before. Robertson maintained continuous surveillance and testified that at 7:15 a.m. the same white male came out of the apartment, but on this day he got into his Oldsmobile automobile and drove away. He said that at 7:53 a.m. Mrs. Coe came out and drove away in her Plymouth automobile. Robertson said he again knocked on the door of the apartment and rang the telephone, as he had done the previous morning, but received no response. Photographs were taken and introduced in evidence of the Madden residence, 552 Young's Mill Lane, of the vehicles operated by both parties, and of Madden and Mrs. Coe leaving the apartment while it was under the surveillance of the detective.

The trial court found from the testimony of the plaintiff, that of the private investigator Robertson, and from photographs which substantiated the investigator's testimony, that the evidence established plaintiff's allegation of adultery.

While a court's judgment cannot be based upon speculation, conjecture, surmise, or suspicion, adultery does not have to be proven beyond all doubt. The evidence must be clear and convincing, based upon proven facts and reasonable inferences drawn from these facts. Although the allegation of adultery was denied by defendant, the record contains no testimony by her, or that of any witness, which contradicts or denies the testimony given by plaintiff and the detective as to the alleged adultery. Defendant makes no attempt to explain her relationship with Madden, or her presence in his unlighted apartment on the two occasions testified to by the detective. There is no denial in the record that the photographs taken of her, Madden, and their vehicles were taken under the circumstances and at the times related by Robertson.

In *Dooley* v. *Dooley,* 222 Va. 240, 278 S.E.2d 865 (1981), the testimony of a detective in a divorce case involving adultery was the subject of comment. There, we held that such testimony "should be carefully scrutinized and acted on with great caution." 222 Va. at 246, 278 S.E.2d at 868. In the instant case, the testimony of Robertson withstands such scrutiny. *Dooley* is factually distinguishable from the case under review. There, the acts of adultery were alleged to have occurred in the wife's home. The person with whom the wife was alleged to have committed adultery did not spend the night but departed from the wife's home around midnight. The wife testified in explanation of the events

which had been narrated by the detective. The commissioner in chancery in *Dooley* concluded that the wife was not guilty of marital misconduct, and we agreed that the evidence of adultery did not amount to "clear, positive and convincing proof." *Id.* at 246, 278 S.E.2d at 868. In the instant case, we cannot say that the decision of the trial court is not based upon credible evidence, proven facts, and reasonable inferences drawn therefrom..

■ The action of the trial court in denying defendant permanent support and maintenance was mandated by Code § 20-107 (now redrafted with changes as Code § 20-107.1), which read, in part, as follows:

> Provided, however, that no permanent support and maintenance for the spouse shall be awarded by the court from a spouse if there exists in his or her favor a ground of divorce under any provision of §§ 20-91(1) through (8) or 20-95. . . .

We find no error in the judgment of the lower court and, accordingly, its decree will be

*Affirmed.*