**Alexandria**

SUSAN MARIE GAMER

v.

JERROLD DESMOND GAMER

No. 0053-92-4

Decided May 11, 1993

COUNSEL

Edward J. Walinsky (Melanie C. Eyre, on brief), for appellant.

Jack S. Rhoades (Charles O. Cake, on brief), for appellee.

OPINION

**COLEMAN, J.**—Susan Marie Gamer appeals a final divorce decree. She contends that the chancellor erred by: (1) not granting her a divorce on the ground that her husband committed adultery; (2) holding her jointly liable for her husband's debt to his first wife; (3) failing to award her a share of her husband's combined military/civilian pension; (4) classifying their sterling silver flatware as her husband's separate property; and (5) awarding her an inadequate amount for attorney's fees.

Assuming without deciding that the chancellor erred by finding that the evidence failed to prove that Jerrold Gamer committed adultery, because his adultery had no economic impact on the value of the marital assets, the trial judge's error did not affect the distribution of the marital property or the monetary award. Accordingly, we find that the error was harmless and affirm the chancellor's decision granting the parties a divorce on the ground that they had lived separate and apart without cohabitation for more than one year. Code § 20-91(9)(a). We find no error in the chancellor's rulings on the equitable distribution or attorney's fee issues.

The Gamers were married in September, 1979. It was the second marriage for both. They had no children. By early 1989, the Gamers had experienced marital problems, and Mrs. Gamer had moved out of the marital bedroom. The couple lived separately in this arrangement throughout 1989.

In early 1990, Mrs. Gamer left the marital residence for a brief period. When she returned unexpectedly on April 1, 1990, she encountered Mr. Gamer downstairs clad in a robe. When she went upstairs to the master bedroom, she found a female neighbor fully clothed, hiding in a locked closet. The neighbor ran from the bedroom, saying, "I did not want you to know." Mrs. Gamer observed that the bed sheets were pulled haphazardly over the bed and that Mr. Gamer's silk shorts were lying on the floor.

The next day, Mrs. Gamer saw her husband and the woman riding together with the woman's arms around him. Mrs. Gamer had suspected her husband's infidelity because, during the previous year, he had mentioned that the neighbor suggested to him that they have an affair. On April 6, Mrs. Gamer permanently moved out of the marital home. On that same date, both Mr. and Mrs. Gamer separately filed for divorce, she on the grounds of adultery and cruelty, he on the alternative grounds of adultery or one year's separation.

Mrs. Gamer hired a private detective. The detective testified he observed that Jerrold Gamer and the woman stayed overnight at the Gamer home on several occasions and he observed them publicly exchange casual intimacies. During the separation, Mrs. Gamer returned home and found the other woman's personal items there. Mrs. Gamer introduced photographs showing that the woman had moved her rugs, furniture, cookbooks, kitchen utensils, and home decorations into the Gamer home. The woman's television and VCR were in the master bedroom, as were a closet of her clothes and shoes; her checkbook and other items listing the Gamer address as hers were observed. On two occasions, Jerrold Gamer admitted to Susan Gamer that the woman lived at the home with him. Mr. Gamer and the woman testified that she stayed overnight at the Gamer house several times a month. However, Jerrold Gamer denied that during that time they ever had sexual relations.

As to equitable distribution, the chancellor ordered that each party would receive one-half of the net equity of $76,617.86 in the jointly owned marital residence, which amount was determined by deducting from the fair market value the balance owing on two trusts against the house and a $36,434.87 judgment lien for a separate debt of Jerrold Gamer. The judgment was for the amount that the military had mistakenly paid to Jerrold Gamer that had been ordered payable to his

first wife in their divorce. Jerrold Gamer had received the overpayment during his marriage to Susan Gamer, and they had spent the money for living expenses.

As to the parties' pensions, both Jerrold and Susan Gamer were federal civil service employees. The chancellor did not award either a share of the other's civil service pension. The chancellor also ruled that Susan Gamer was not entitled to any portion of Mr. Gamer's military retirement benefits that he had accrued in the one year prior to or during their marriage. She contends that she was entitled to a percentage of all pension benefits he earned during the marriage and to a percentage of his military pension earned before marriage because, after the marriage, they had used marital funds to purchase enhanced premarital pension benefits.

As to a set of sterling silver flatware, the chancellor ruled that it was Jerrold Gamer's separate property because he had purchased it prior to their marriage. Susan Gamer contends that the evidence did not support the trial court's finding that Jerrold Gamer purchased the silver before the marriage, which was the factual basis for classifying it as Jerrold Gamer's separate property.

Finally, the chancellor ordered Mr. Gamer to pay $5,000 of Mrs. Gamer's $50,000 legal fees, an amount which she contends is inadequate.

## I. GROUNDS

One who alleges adultery must prove it by "clear and convincing" evidence independent of the parties' admissions. *Coe v. Coe*, 225 Va. 616, 622, 303 S.E.2d 923, 927 (1983); *Seemann v. Seemann*, 233 Va. 290, 293, 355 S.E.2d 884, 886 (1987). "While a court's judgment cannot be based upon speculation, conjecture, surmise, or suspicion, adultery does not have to be proven beyond a reasonable doubt." *Coe*, 225 Va. at 622, 303 S.E.2d at 927. The commissioner, acknowledging the appropriate burden of proof, found, however, that neither Susan nor Jerrold Gamer had proven by clear and convincing evidence that the other had committed adultery. The chancellor accepted the commissioner's findings and granted the parties a divorce based on more than one year's uninterrupted separation.

A decree confirming a commissioner's report is presumed to be correct and will not be disturbed on appeal unless plainly wrong or without evidence to support it. *Seemann*, 233 Va. at 293, 355 S.E.2d at

886; *Dodge v. Dodge*, 2 Va. App. 238, 242, 343 S.E.2d 363, 365 (1986). Furthermore, on appeal we review the evidence in the light most favorable to the party prevailing at trial and accord to it all reasonable inferences. *Pommerenke v. Pommerenke*, 7 Va. App. 241, 244, 372 S.E.2d 630, 631 (1988) (citing *Martin v. Pittsylvania County Dep't of Social Servs.*, 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986)). Notwithstanding the weighty burden of proof to establish adultery and the deferential standard of appellate review, the commissioner's findings and recommendation disregarded the obvious. There was no evidence that the relationship or living arrangement between Jerrold Gamer and the woman was for economic benefit or personal convenience or was other than amorous. Overwhelming evidence was introduced of Jerrold Gamer's extramarital affair, and the only evidence to the contrary was his less than credible bare denial.

■ Nevertheless, even if the chancellor erred by finding the evidence insufficient to prove that Jerrold Gamer had committed adultery, the record fails to show that his adulterous conduct had any economic impact on the marital property; therefore, the error was of no real consequence. Furthermore, we decline to disturb the decree that granted the parties a divorce on no-fault grounds. "Where dual grounds for divorce exist," the chancellor "can use his sound discretion to select the appropriate grounds upon which he will grant the divorce." *Zinkhan v. Zinkhan*, 2 Va. App. 200, 210, 342 S.E.2d 658, 663 (1986) (citing *Robertson v. Robertson*, 215 Va. 425, 426-27, 211 S.E.2d 41, 43 (1975)); *Lassen v. Lassen*, 8 Va. App. 502, 505, 383 S.E.2d 471, 473 (1989). Thus, the chancellor did not err by granting the parties a divorce on the ground of an uninterrupted one-year separation.

## II. EQUITABLE DISTRIBUTION

### (A) *Marital Fault*

■ Even though the chancellor may have erred in finding the evidence insufficient to prove adultery, Code § 20-107.3(E) does not limit the chancellor to considering legal fault in deciding how to equitably distribute the marital property. The chancellor is required to consider all "circumstances and factors which contributed to the dissolution of the marriage." Code § 20-107.3(E)(5); *Smoot v. Smoot*, 233 Va. 435, 440 n*, 357 S.E.2d 728, 730 n* (1987). The chancellor specifically found that the marital fault of both parties in bringing about the dissolution of the marriage did not affect the value of the marital property.

This ruling, based on the facts in the record before us, would apply equally to Jerrold Gamer's adultery. Assuming that he committed adultery, it had no economic impact upon the parties' property, nor did it affect the value of the marital assets. *Aster v. Gross*, 7 Va. App. 1, 5-6, 371 S.E.2d 833, 836 (1988). Thus, even though the trial judge may have erred in finding no adultery, the erroneous finding was of no legal consequence and was harmless. *See Barnes v. Barnes*, 16 Va. App. 98, 428 S.E.2d 294 (1993).

### (B) *Marital Residence and Debt*

Mrs. Gamer contends that the chancellor erred when he offset against her share of the marital residence one-half of a debt that Jerrold Gamer owed to his first wife. The debt, which had been reduced to judgment, was for payments that the military had mistakenly made to Jerrold Gamer that had been awarded to his first wife in their divorce as her share of his military retirement benefits. The chancellor concluded that, because those benefits had been paid to him during his marriage to Susan Gamer and were used by them for their joint benefit, it was appropriate to reduce the value of the marital assets by the amount of the debt, particularly as to the real estate against which the debt was a judgment lien.

Code § 20-107.3(E)(7) provides that the debts of each spouse shall be considered as a factor when determining how to distribute jointly owned marital property or to fashion a monetary award. The purpose and nature of the debt, and for and by whom any funds were used, should be considered in deciding whether and how to credit or allot debt. In this case, the court considered that the debt was for repayment of funds erroneously received and paid to Jerrold Gamer, but the court recognized that the funds were expended by the Gamers for their joint benefit. The chancellor did not, as Susan Gamer contends, require her to pay a portion of a separate debt owed to her husband's former spouse. In fact, at the time this case was filed, a judge could not separately allot marital debt under Code § 20-107.3. *See Day v. Day*, 8 Va. App. 346, 349, 381 S.E.2d 364, 366 (1989). Code § 20-107.3(C) limited the judge to considering which party had debt, the amount and what it was for, as factors in determining how to fashion a monetary award. Where the debt was secured by marital assets or was a lien on marital property, the purpose, nature, and character of the debt and who benefitted from it were factors to be considered by the chancellor in distributing the property or in fashioning the monetary award. *See Trivett v. Trivett*, 7 Va. App. 148, 151, 371 S.E.2d 560, 562 (1988).

In the present case, the chancellor, when dividing the equity in the marital residence, considered the nature and character of the judgment debt and took into account that Susan and Jerrold Gamer jointly benefitted from the funds that the debt represented. The chancellor did not abuse his discretion in formulating an award by taking into account who benefitted from the funds that the debt represented. We affirm the chancellor's decision to offset one-half of the judgment lien against the fair market value of the jointly owned marital residence.

### (C) *Military/Civil Pension*

The evidence was not sufficient for the chancellor to have determined the marital share of Jerrold Gamer's pension. Accordingly, the chancellor did not err by refusing to award Susan Gamer a percentage of his pension and by allowing both parties to retain their respective pensions.

Jerrold Gamer retired in September, 1980, after twenty-two years Navy service. At retirement, he had been married to Susan Gamer for one year, since September, 1979. In August, 1981, Jerrold Gamer obtained a civil service job, which he held when the parties separated in 1989. In order to merge his Navy and civil service pensions and to maximize his retirement benefits, Jerrold Gamer paid into his retirement $17,000, part of which was for the employee's share of FICA taxes that he had not had to pay while in the military. Of the $17,000 buy-in, the trial judge found, on conflicting evidence, that $6,000 was paid with marital funds and $11,000 was from Jerrold Gamer's separate funds. The evidence did not show the present value of Jerrold Gamer's pension at the time of their separation or its value in relation to Susan Gamer's pension, she having been a civil service employee throughout the marriage. Furthermore, the evidence did not show the extent to which the contribution of $6,000 marital funds enhanced the present value of Jerrold Gamer's pension.

Code § 20-107.3(G) provides that, upon consideration of the factors set forth in Code § 20-107.3(E), the court may direct payment of up to fifty percent of the "marital share" of a party's pension. The "marital share" of a pension is that portion of the total interest that was earned during the marriage. Code § 20-107.3(G). Generally the value or share of a pension that was earned before marriage or after the divorce is not part of the marital share. An award may be a percentage of the marital share of the pension, in which case payment is to be made only as retirement benefits are paid. Code § 20-107.3(G).

This method of making an award is the deferred distribution approach. *See Berrington v. Berrington*, 409 Pa. Super. 355, 364, 598 A.2d 31, 35 (1991), *aff'd*, 534 Pa. 393, 633 A.2d 589 (1993). Code §§ 20-107.3(C), (D) and (G) provide that the court may also make a monetary award, and in so doing, the court shall consider the value of marital property, including the value of the marital share of a party's retirement or pension plan. *See Gamble v. Gamble*, 14 Va. App. 558, 570-71, 421 S.E.2d 635, 642-43 (1992). This method of making an award of the value of a pension is the immediate offset approach.

Under either the deferred distribution or immediate offset methods for distributing pension or retirement benefits, the party claiming to be entitled to a share of the fund must present sufficient evidence to enable the judge to determine what percentage of the pension is the marital share or to determine the present value of the marital share. *See Bowers v. Bowers*, 4 Va. App. 610, 617, 359 S.E.2d 546, 550 (1987); *see also Gamble*, 14 Va. App. at 578-79, 421 S.E.2d at 647 (Benton, J., concurring). Susan Gamer concedes that she introduced no evidence of the present value of Jerrold Gamer's pension from which the chancellor could have made a monetary award. Furthermore, to the extent that $6,000 of marital funds were used to purchase additional retirement benefits, even if that transaction transmuted all or a portion of Jerrold Gamer's separate retirement benefits into marital property, the evidence was insufficient for the chancellor to have determined the present value of the pension. Thus, the evidence was insufficient for the court, using the immediate offset approach, to have made a monetary award based on the value of the pension.

Susan Gamer contends, however, that the trial judge should have allowed her, at a minimum, a percentage of the marital share of Jerrold Gamer's pension or retirement benefits that were earned during the marriage. She argues that the disparity in their respective salaries is sufficient for the chancellor to have concluded that a significant disparity also existed in the values of their respective pensions. Therefore, she contends, she is entitled to a percentage of that marital asset, particularly since $6,000 of marital funds was used to purchase additional retirement benefits for Jerrold Gamer.

First, as to the $6,000 contribution, even though marital funds were used to purchase additional retirement benefits, no evidence showed the extent to which that payment enhanced the present value of the pension or affected the value of the marital share. It would have been pure speculation for the chancellor to have attempted to determine

what portion of Jerrold Gamer's separate military pension may have been transmuted into marital property. Thus, the only remaining question is whether the chancellor may have erred by failing to award Susan Gamer a percentage of her former husband's pension based on the number of years he paid into it during the marriage.

■ Both parties had been civil service employees throughout most of their marriage. The fact that a significant disparity in the value of the parties' respective pensions may have existed does not necessarily require that the chancellor award each a percentage of the other's pension. Each marital asset is not necessarily entitled to be treated the same for purposes of equitable distribution. The chancellor may determine, depending upon how the factors in Code § 20-107.3(E) are applied, that certain marital assets should be divided and treated differently than others. *McGinnis v. McGinnis*, 1 Va. App. 272, 276-77, 338 S.E.2d 159, 161 (1985). Here, when the evidence does not show the extent to which a disparity in value existed between Susan and Jerrold Gamer's pensions, the trial judge did not err by allowing the parties to retain their respective pensions. Both had contributed to their respective pensions throughout the marriage. The situation was not such that one was making monetary contributions, while the other was making nonmonetary contributions, to the marriage. The chancellor's decision allowed each party to receive the benefit of his and her respective monetary contributions in proportion to the value of the contribution. Even had the exact disparity in value been proven, the court has considerable latitude in determining whether or how it makes an award or distributes property. *Brown v. Brown*, 5 Va. App. 238, 244-45, 361 S.E.2d 364, 368 (1987) (citing *Smoot v. Smoot*, 233 Va. 435, 443, 351 S.E.2d 728, 732 (1987)). Considering the length of the marriage, the value of the marital assets divided, and the statutory factors, the chancellor did not err by ordering that the parties retain the value of their respective pensions.

(D) *Classification of Personal Property—Silver Flatware*

The chancellor classified the sterling silver flatware as Jerrold Gamer's separate property. Susan Gamer contends that the written document that she introduced, which was a conditional sales contract, proved that the silver flatware was purchased from Buffums in California on October 26, 1979, approximately one month after the

parties married. She asserts that the contract was the only credible evidence showing when the silver flatware was acquired and it established that the property was marital. Thus, she contends, the chancellor erred by classifying the silver as Jerrold Gamer's separate property.

█ Classification of property as marital or separate is a factual issue that is determined by whether the property was acquired before or during marriage. Property acquired before marriage is separate unless it is transmuted; property acquired during marriage is presumed to be marital. Code § 20-107.3(A)(1)-(2).

Jerrold Gamer testified that he bought the silver some time in late 1978, before he was married. He stated that he bought the same pattern as his mother's silver so that he would have a matching set when she left him her silver. He made no attempt to explain the conditional sales contract. Other than his testimony that he bought the silver before they were married, Jerrold Gamer did not refute that the conditional sales contract was for the purchase of the silver. Thus, Jerrold Gamer's testimony as to the date he purchased the silver was in conflict with the date shown on the conditional sales contract.

█ The weight to be given evidence and the resolution of conflicts in the evidence are for the fact finder. *Cash v. Commonwealth*, 5 Va. App. 506, 513, 364 S.E.2d 769, 772 (1988). We cannot disturb a chancellor's finding of fact so long as it is supported by credible evidence. *Morris v. Badger Powhatan/Figgie Int'l, Inc.*, 3 Va. App. 276, 279, 348 S.E.2d 876, 877 (1986). The trial court's factual findings must be accorded great deference. Code § 8.01-680. Unless it appears from the record that the chancellor has abused his discretion or that the evidence fails to support the findings of fact, the chancellor's findings will not be disturbed. *Brown v. Brown*, 5 Va. App. 238, 245, 361 S.E.2d 364, 368 (1987). The chancellor was entitled to believe Jerrold Gamer's testimony as to when and accept his explanation as to why he purchased the silver flatware. Because credible evidence existed in the record to support the chancellor's finding that the silver was purchased prior to the Gamers' marriage, we cannot say that the chancellor abused his discretion in classifying the silver as Mr. Gamer's separate property.

█ Moreover, there was no evidence before the chancellor of the value of the silver flatware as of the date of the evidentiary hearing or on the date that the parties separated. The only evidence presented as

to value was that Jerrold Gamer had purchased the flatware twelve years before the evidentiary hearing for $2438.38. Without evidence of the value of marital property, the chancellor could not have made a monetary award. *See Mitchell v. Mitchell*, 4 Va. App. 113, 118, 355 S.E.2d 18, 21 (1987); *Bowers*, 4 Va. App. at 617, 359 S.E.2d at 550. Code § 20-107.3 requires that the party claiming entitlement to a monetary award for marital property present evidence from which the court can classify *and* value the property. *Hodges v. Hodges*, 2 Va. App. 508, 517, 347 S.E.2d 134, 139 (1986). Accordingly, even if the property had been misclassified, the chancellor did not err by failing to include as part of the monetary award an amount based on the value of the silver because its value was not proven.

### III. ATTORNEY'S FEES

Finally, Mrs. Gamer argues that the court awarded her an inadequate amount of attorney fees. An award of attorney fees is discretionary with the court after considering the circumstances and equities of the entire case and is reviewable only for an abuse of discretion. *Ellington v. Ellington*, 8 Va. App. 48, 58, 378 S.E.2d 626, 631 (1989). "The key to a proper award of counsel fees is reasonableness under all of the circumstances revealed by the record." *Id.* In this case, Mrs. Gamer claimed that she had accrued approximately $50,000 in attorney fees. At the time of trial, she had paid $13,000 of those fees. The chancellor found that Mr. Gamer earned approximately twice as much as Mrs. Gamer. After considering these factors, as well as the extent and complexity of the litigation, the chancellor ordered Mr. Gamer to pay $5,000 of Mrs. Gamer's attorney fees. We do not believe that the chancellor abused his discretion in this case and, therefore, uphold the award of $5,000 to Mrs. Gamer in attorney fees.

### CONCLUSION

For the foregoing reasons, we affirm the chancellor's decree of divorce based on one year's separation as well as the accompanying equitable distribution order and award of attorney fees.

*Affirmed.*

Baker, J., and Fitzpatrick, J., concurred.