COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Petty and Senior Judge Clements
Argued at Richmond, Virginia


PHILLIP S. GRIFFIN, II

MEMORANDUM OPINION[*] BY
v.      Record No. 2810-08-4              JUDGE WILLIAM G. PETTY
                                    DECEMBER 29, 2009
KATHRYN O. GRIFFIN


FROM THE CIRCUIT COURT OF THE CITY OF WINCHESTER
Thomas A. Fortkort, Judge Designate

Walter C. Jacob for appellant.

William E. Shmidheiser, III (Lenhart Obenshain PC, on brief), for
appellee.


        Phillip S. Griffin, II (husband) appeals the trial court's final decree granting Kathryn O.

Griffin (wife) a divorce.  Husband raises eighteen questions on appeal.  We agree with husband that

the trial court erred in its equitable distribution decision.  Accordingly, we reverse the trial court's

determinations on that issue and remand for a decision consistent with this opinion and a

recalculation of the equitable distribution and spousal support awards.  We affirm the remainder of

the trial court's decision.

        Because the parties are fully conversant with the record in this case and because this

memorandum opinion carries no precedential value, we recite only those facts and incidents of

the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

We view those facts and incidents, and all reasonable inferences flowing therefrom, in the light

most favorable to wife, the party prevailing below.  Congdon v. Congdon, 40 Va. App. 255, 258,

—————————————
        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

578 S.E.2d 833, 835 (2003). "That principle requires us to 'discard the evidence' of [husband] which conflicts, either directly or inferentially, with the evidence presented by [wife] at trial." Id. (quoting Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002)).

The parties were married January 7, 1995, in Richmond, Virginia, and four children were born of the marriage. Wife filed a bill of complaint for divorce on December 27, 2006, and later amended her bill of complaint to allege adultery on June 12, 2007. The trial court entered its final decree of divorce on October 24, 2008. This appeal followed.

I. PROCEDURALLY DEFAULTED ARGUMENTS

Husband has procedurally defaulted several of his arguments; accordingly, we will not reach the merits of those arguments in this opinion. In determining that several of husband's questions presented are procedurally defaulted, we share in the sentiments of another panel of this Court, who faced a similar situation in the appeal of a contentious divorce case:

> Despite the willingness of the [husband] to file motion after motion in the trial court, [he was] apparently unwilling to expend the effort required to research several of the issues that [he raises] in this appeal . . . . The "throw everything at the wall and hope something sticks" approach utilized in this appeal is as unappreciated as it is ineffective. If [husband was] unable to find legal support for [his] questions presented . . . [he] should not have included those questions presented in [his] brief.
>
> Appellate courts are not unlit rooms where attorneys may wander blindly about, hoping to stumble upon a reversible error. If the [husband] believed that the circuit court erred, it was [his] duty to present that error to us with legal authority to support [his] contention.

Fadness v. Fadness, 52 Va. App. 833, 850, 667 S.E.2d 857, 866 (2008).

A. Failure to Provide a Sufficient Record to Determine Whether
the Trial Court Complied With Code § 20-124.3

Husband argues that the trial court both failed to consider the child custody factors contained in Code § 20-124.3 and failed to communicate the basis for its custody decision as

required by Code § 20-124.3.[1]  Because husband did not provide us an adequate record from which to review this issue, we cannot address it on its merits, and affirm the judgment of the trial court.

It is an axiom of appellate law that "the judgment of the lower court is presumed to be correct and the burden is on the appellant to present" the appellate court "a sufficient record from which we can determine whether the lower court has erred in the respect complained of." Justis v. Young, 202 Va. 631, 632, 119 S.E.2d 255, 256-57 (1961).  "In the absence [of a sufficient record], we will not consider the point." Jenkins v. Winchester Dep't of Soc. Servs., 12 Va. App. 1178, 1185, 409 S.E.2d 16, 20 (1991).  Additionally, it is not the function of this Court to "search the record for errors in order to interpret husband's contention[s] . . . ." Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992).  Instead, we must rely upon the parties to include in the appendix those portions of the trial record that are necessary to decide the appeal.

Indeed, the appendix, the contents of which are set out in Rule 5A:25, must be filed by the appellant.  Its purpose is to assist this Court in determining whether the facts in the record support appellant's claims:

> The appendix is a tool vital to the function of the appellate process in Virginia.  Without it, the [three judges on this panel] would have to pass the original record from one to the other.  Much of the contents [of the record], though material at trial, may be utterly irrelevant to the issues posed on appeal.  By requiring the publication and distribution of an appendix which excludes all irrelevances, the Rules of Court expedite the adjudication of the appeal and reduce the costs.  By requiring the inclusion of all parts

---

[1] Code § 20-124.3 lists ten factors for the trial court to consider when "determining best interests of a child for purposes of determining custody or visitation arrangements . . . ."  The statute also requires the trial judge to "communicate to the parties the basis of the decision either orally or in writing."

of the record germane to the issues, the Rules promote the cause of plenary justice.

Thrasher v. Burlage, 219 Va. 1007, 1009-10, 254 S.E.2d 64, 66 (1979) (per curiam). Finally, Rule 5A:20(d) requires appellants to include in their briefs "[a] clear and concise statement of the facts that relate to the questions presented, with references to the pages of the transcript, written statement, record, or appendix."

Conspicuously missing from the three thousand and fifty-one page appendix is a complete transcript of the trial court's ruling from the bench. Instead, husband included a one-page excerpt of the trial court's decision announced from the bench on March 31, 2008 awarding sole custody of the children to the wife. From this one page, husband asks us to conclude that the trial court failed to both consider the factors for determining the best interests of the children as required by Code § 20-124.3, and communicate the basis for its custody determination to the parties. While the trial court did not fulfill the requirements of Code § 20-124.3 in the brief portion of the transcript provided, we are unwilling to simply speculate that it did not do so elsewhere in its oral ruling from the bench. See Yarborough v. Commonwealth, 217 Va. 971, 978, 234 S.E.2d 286, 291 (1977) (A trial court is presumed to know the law and apply it correctly to the facts "absent clear evidence to the contrary in the record.").

The appellant's failure to provide us a complete copy of the trial court's ruling has the same preclusive impact on our ability to address his arguments as if he had failed to make the transcript part of the record. Rule 5A:25(c)(2) requires the appendix to include "the judgment appealed from, and any memorandum or opinion relating thereto." In cases where a trial court announces its reasoning from the bench, that oral pronouncement is as much a part of the trial court's opinion as the final order.

Therefore, without a full transcript of the trial court's decision included in the appendix, we cannot conclude that the trial court erred: "[T]he judgment of a trial court comes to an

appellate court with a presumption that the law was correctly applied to the facts," West v. West, 53 Va. App. 125, 132, 669 S.E.2d 390, 394 (2008), and it is the appellant's burden to overcome that presumption. It is not this Court's function to "comb through the record . . . in order to ferret-out for ourselves the validity of [husband's] claims." Fitzgerald v. Bass, 6 Va. App. 38, 56 n.7, 366 S.E.2d 615, 625 n.7 (1988).[2] Were we to cull through this massive record in search of facts to support husband's legal argument, we would become advocates rather than arbiters. See Fadness, 52 Va. App. at 850, 667 S.E.2d at 865 ("'To ignore [our procedural rules] by addressing the case on the merits would require this court to be an advocate for, as well as the judge of the correctness of, [husband's] position on the issues he raises.'" (quoting Jones v. Commonwealth, 51 Va. App. 730, 734-35, 660 S.E.2d 343, 345 (2008)).

B. Failure to Preserve the Issue of the Amended Bill of Complaint
for Appellate Review

On June 12, 2007, wife moved to amend her bill of complaint for divorce to include adultery as a grounds for divorce. The trial court granted the motion on August 7, 2007. Husband did not object to this amendment until he moved the trial court to reconsider its final order on September 18, 2008—over a year later. "No ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor *at the time of the ruling* . . . ." Rule 5A:18 (emphasis added). Thus, by its own terms, Rule 5A:18 limits our "consideration . . . to those rulings upon which timely objection has been made . . . ." Allston v. Commonwealth, 274 Va. 759, 773, 652 S.E.2d 456, 464

---

[2] Ordinarily, we look to the appellee to include in the appendix those portions of the record that refute arguments made by the appellant and to address those arguments, with appropriate citations to the appendix, in its brief. Here, appellee inexplicably failed to respond to the argument that the trial court had not complied with Code § 20-124.3 or to include portions of the record that would support her cause in the appendix. Tempting as it might be to assume that, had the trial court explained its ruling, appellee would have included that explanation in the appendix, we cannot ignore the fact that there is no obligation on appellee to dispel allegations of trial court error. The burden of establishing such error rests with the appellant.

(2007). "To be timely, an objection must be made when the occasion arises . . . ." Marlowe v. Commonwealth, 2 Va. App. 619, 621, 347 S.E.2d 167, 168 (1986). This requirement reflects the rule's purpose "to allow the trial court to correct . . . any error that is called to its attention" thereby avoiding unnecessary appeals. Lee v. Lee, 12 Va. App. 512, 514, 404 S.E.2d 736, 737 (1991) (en banc). Indeed, this Court has held that Rule 5A:18 exists to protect not only judicial efficiency, but also the interests of litigants in avoiding the costs of appeal when they "may have been able to offer an alternative to the objectionable ruling, but did not do so, believing there was no problem." Id.

Here, husband argues that wife did not properly plead adultery in her amended bill of complaint for divorce. However, the record indicates that husband did not raise the issue of defective pleading until he included it in his motion to reconsider the trial court's final divorce decree. Because husband did not object to the sufficiency of wife's amended pleading at the time of the amendment, allowing her an opportunity to correct the problem, we determine that the objection was not timely. Accordingly, Rule 5A:18 bars our consideration of this issue.

## C. Award of Attorney's Fees at Trial

Husband also contends that the trial court abused its discretion in awarding wife attorney's fees for fees accrued in the trial court. Husband does not, however, cite any legal authority in support of this claim. According to Rule 5A:20(e), "an appellant's opening brief [must] contain '[t]he principles of law, the argument, and the authorities relating to each question presented.' Unsupported assertions of error 'do not merit appellate consideration.'" Jones, 51 Va. App. at 734, 660 S.E.2d at 345 (quoting Buchanan, 14 Va. App. at 56, 415 S.E.2d at 239). The policy behind Rule 5A:20(e) is clear:

> "A court of review is entitled to have the issues clearly defined and to be cited pertinent authority. The appellate court is not a depository in which the appellant may dump the burden of argument and research. To ignore such a rule by addressing the

case on the merits would require this court to be an advocate for, as well as the judge of the correctness of, [appellant's] position on the issues he raises. On the other hand, strict compliance with the rules permits a reviewing court to ascertain the integrity of the parties' assertions which is essential to an accurate determination of the issues raised on appeal."

Fadness, 52 Va. App. at 850, 667 S.E.2d at 866 (quoting Jones, 51 Va. App. at 734-35, 660 S.E.2d at 345).

"[W]hen a party's 'failure to strictly adhere to the requirements of Rule 5A:20(e)' is significant, 'the Court of Appeals may . . . treat a question presented as waived.'" Parks v. Parks, 52 Va. App. 663, 664, 666 S.E.2d 547, 548 (2008) (quoting Jay v. Commonwealth, 275 Va. 510, 520, 659 S.E.2d 311, 317 (2008)). The trial court unquestionably had authority to award attorney's fees to wife. Code § 20-99; Ingram v. Ingram, 217 Va. 27, 29, 225 S.E.2d 362, 364 (1976). Husband makes no legal or factual argument explaining why the trial court abused its discretion in exercising that authority. Thus, we deem husband's unsupported assertions that the trial court erroneously awarded attorney's fees to wife to be a significant violation of Rule 5A:20(e), that precludes us from addressing the merits of the question presented. Accordingly, we treat this question as waived.

II. CUSTODY

A. Award of Sole Custody to Wife

Husband argues that the trial court abused its discretion when it awarded wife sole custody of the parties' children. We disagree with husband, and affirm the trial court's decision.

"In matters of custody, visitation, and related child care issues, the court's paramount concern is always the best interests of the child." Farley v. Farley, 9 Va. App. 326, 327-28, 387 S.E.2d 794, 795 (1990). On appeal, we accord the trial court's determination of children's best interests great deference; that determination "is not reversible on appeal unless the trial court abuses its discretion in making that determination, or the decision lacks supporting evidence." M.E.D v.

- 7 -

J.P.M., 3 Va. App. 391, 398, 350 S.E.2d 215, 220 (1986). Finally, where, as here, there is conflicting evidence, it is the trial court's duty, when sitting as the finder of fact, to resolve conflicts in the evidence. City of Bedford v. Zimmerman, 262 Va. 81, 86, 547 S.E.2d 211, 214 (2001).

Husband argues that the trial court erred by rejecting his evidence that he was a "wonderful father." That, in and of itself, however, does not constitute an abuse of discretion. Instead, we must review the record to determine whether there was credible evidence to support the trial court's determination to place the children in wife's sole custody. We conclude that there was.

During the course of the litigation below, the trial court ordered that neither party should disparage the other parent or do anything to estrange the children from the other parent. The parties were also ordered to refrain from discussing or questioning the children about the other parent or the divorce case in general. Wife filed several motions for contempt, alleging that husband had repeatedly violated the order. On October 1, 2007, as a result of repeated violations of court orders, specifically disparaging wife in front of the children and allowing husband's girlfriend to stay overnight with the children, the court ordered that husband could have no contact whatsoever with the children for one month.

The guardian *ad litem*, James Weissenborn, testified about husband's desire to have custody of his two older children. The guardian *ad litem* further stated that he had not "seen from [husband] the kind of cooperation that I would like to see and encouragement of the boys' relationship with their mother." The guardian *ad litem* also indicated that the two older boys told him that husband instructed the boys to pack their suitcases and sneak out of wife's house while everyone was asleep so husband could take them to the Homestead. Mr. Weissenborn also stated during his report that he

> has a hard time coming to the conclusion that [husband] would be
> the one that would be the best place for those boys now, and I

- 8 -

don't believe they should be split.  I mean, I have no reason to believe that splitting – sending the two boys to live with [husband] and leaving [the younger two children] with [wife] is in the children's best interest at all.

The guardian *ad litem's* recommendation on August 7, 2007 was to terminate joint custody and assign sole legal custody to wife.

Also during the August 7, 2007 proceedings, wife played a voicemail message left by husband on one child's cell phone.  During the message, husband stated, "Your Mommy just filed an eight-page motion with the Court, and I was wondering whether you wanted to terminate all visitation with your Daddy as Mommy has requested."  We also note that the husband admitted at trial that the children had seen him and his girlfriend, Kim Arnold, share a bed together and that the parties' youngest child has slept in the same bed as he and his paramour while traveling.

In the guardian *ad litem's* report produced to the court on January 21, 2008, the guardian *ad litem* again recommended custody be awarded to wife.  The guardian *ad litem* stated:

> Inasmuch as I believe that [wife] will do the most to promote a relationship for the children with their Father, I recommend that she have sole legal custody of the children.  I believe the best interests of the children demands nothing less.  [Husband], an experienced trial lawyer, would do well to remember that the purpose of visitation is for the children's benefit and is the lens through which the decisions affecting the children should be viewed.

The guardian *ad litem* also specifically noted that he believed husband was giving the children inappropriate information about the case, in violation of the court's order, either directly or through his girlfriend.  The guardian *ad litem* stated, "[c]learly the children have too many fears about their parents (Mom will be picked up by the Police, Dad will go to jail) and what will happen not to have been given too much information."

Based on the foregoing, we cannot conclude that the trial court abused its discretion in awarding sole custody to wife. We affirm.

### B. Failure to Consider the Children's Custody Preference

Husband also argues that the trial court erred by refusing to allow the children to testify and by doing so failing to consider the children's custody preferences. "The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988). According to Code § 20-124.3(8), one of the factors the trial court must consider in determining the best interests of the children is "[t]he reasonable preference of the child, if the court deems the child to be of reasonable intelligence, understanding, age and experience to express such a preference."[3]

While it is true that the trial court did not require the children to testify as to their custody preference, the parties and the guardian *ad litem* made the court aware of the children's preferences as the children had expressed to them individually. During a hearing on August 7, 2007, the guardian *ad litem* testified about his findings and report on the Griffin children. The two older children indicated that they would "like to live with their father. They don't not want to live with their mother. They just would like to live with their father." The two younger children expressed no preference. They do not "want to avoid seeing their father . . . . They want to want to see their father. They want a relationship."

On January 21, 2008, the guardian *ad litem* gave a report of his interviews and interactions with the children. The following was specifically reported to the court by the guardian *ad litem* in his written report:

---

[3] The record indicates that the parties' eldest child was ten years old at the time of the trial court's final order, and the youngest was only five years old.

[One son] initially said he wanted to be with his Father. He continues to state that preference not only because he is mad at his Mother but also because he would get away from [his brother]. He subscribes to visitation with his mother.

[The second son] initially was reasonably interested in being with his Father though he did not identify how much time that should be. Most recently he indicated he would think about seventy percent with Dad and about thirty percent with Mom.

[The third son] simply wants others to decide. He loves both parents. [The daughter] seems okay with the present arrangements.

Husband also spoke for the children on several occasions. During proceedings on August 7, 2007, husband told the court that one son came to him and said, "Dad, what I want to do is I want the visitation schedule to flip. I want to spend the time that I currently spend with Mom, I want to spend it with you, and the time that I spend with you, I want to spend with Mom." Husband said that he asked him what his brother wanted and the child stated, "[his brother] in his report said to the guardian that he wanted to spend 100 percent of his time with his dad and none of it with his mother." Husband further stated that, "I think the kids will tell you that they're frustrated that they go at least eight days every two weeks without being allowed to see their dad . . . ."

In husband's motion to enjoin, filed September 28, 2007, husband stated that one son was despondent and withdrawn, refusing to eat or drink for four hours before returning to wife's custody. In his supplement to the findings of fact and conclusions of law, filed January 3, 2008, husband stated he wanted to have shared custody of the children and "have the three boys majority of the time consistent with their wishes. Their wishes have been relayed to the guardian ad litem consistently since April 2007."

Wife also testified about the children's feelings about their parents. In a conference call on August 16, 2007, wife stated that "the children ask [her] things like, are the police after me,

- 11 -

am I taping their phone conversations with their dad, did I break into their dad's car, am I getting married soon, and do I hate their dad's girlfriend." She further testified about the mental state of each child:

> [One son] is confused and sad. He told me that his dad and his girlfriend slept together in front of [his brother and sister] in the same room, and [he] says, I just don't know why he's doing this. And that's a quote. [Another son] asked me a few nights ago where I had been the week before. He said – asked me if I went to Phil's house, because Dad – quote, Dad said you broke into his car and threw stuff all over the place.

> [He] asks me if I'm dating someone, because Dad says I have been since Christmas. And he tells me fearfully that his dad tells him that he'll have a stepfather by Christmas . . . .

> The younger ones tell me that they're confused. [The daughter] said just last week, Dad's girlfriend yelled at her for saying that [she] said Dad loves my mom, and the girlfriend yelled, Your Dad doesn't love your Mommy anymore. He loves me. [The daughter and one son] told me that Kim won't let them call me. I've asked why, and she and the boys told me that Kim has told them that the Judge has ordered them to call—only call home one time a day and between certain hours.

On January 21, 2008, the guardian *ad litem* produced a written report on his observations and recommendations based on his time with the Griffin children. In the report, he reiterated the previous observations of the children and their individual wishes about shared time with each parent.

Because it is clear that the trial court had before it for consideration the children's custody preferences, it did not abuse its discretion by refusing to allow those children to be called as witnesses. Further, we cannot say, based on the evidence before us, that the trial court failed to consider those preferences.

III. SUFFICIENCY OF THE EVIDENCE TO PROVE ADULTERY

Husband argues that there was insufficient evidence to prove adultery in this case. We conclude that there was sufficient evidence to support the trial court's decision and, thus, we affirm.

Initially, we note that proof of post-separation adultery is sufficient to support a trial court's decision to grant a divorce on the fault grounds of adultery. See Coe v. Coe, 225 Va. 616, 619, 303 S.E.2d 923, 925 (1983). The party alleging adultery must prove it by clear and convincing evidence. Id. at 622, 303 S.E.2d at 927. Our Supreme Court has defined "clear and convincing evidence" as "that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." Walker Agcy. & Aetna Ca. Co. v. Lucas, 215 Va. 535, 540-41, 211 S.E.2d 88, 92 (1975). This standard of proof "is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and *unequivocal*." Id. (emphasis in the original). Thus, "'while a court's judgment cannot be based upon speculation, conjecture, surmise, or suspicion, adultery does not have to be proven beyond a reasonable doubt.'" Gamer v. Gamer, 16 Va. App. 335, 339, 429 S.E.2d 618, 622 (1993). Finally, adultery may be proven by circumstantial, as well as direct, evidence. Bowen v. Pernell, 190 Va. 389, 393, 57 S.E.2d 36, 38 (1950).

Kim Arnold, husband's paramour, testified in a deposition conducted on August 20, 2007 regarding her relationship with husband. The transcript of the deposition was admitted into evidence at trial. Arnold and husband began dating in April 2007. She stated that husband had spent the night at her house approximately fifteen times and that she had spent the night at his house approximately twenty-to-twenty-five times. Arnold also accompanied husband to a Virginia Bar Association Program at the Homestead in July 2007, where husband listed her as his "Spouse/Guest." While at the Homestead, Arnold stayed in the same room as husband and

signed invoices as "Kim Griffin." The two also engaged in a "couple's massage." Finally, wife hired a private investigator to follow her husband beginning in May 2007. The investigator's report indicated that husband and Arnold spent the night together somewhat regularly during the time he surveilled them. For instance, on one occasion, the investigator saw Arnold and husband walk hand-in-hand to husband's house, go inside, and remain there all night. The next morning when he saw Arnold leave he described her as "somewhat disheveled . . . dressed in different clothes than those I observed her wearing late [the night before]."

Although it is true, as husband argues, that "'[t]he testimony of a hired detective . . . should be carefully scrutinized and acted on with great caution'" when the proof of adultery is at issue, Seamann v. Seamann, 223 Va. 290, 293, 355 S.E.2d 884, 886 (1987) (quoting Colbert v. Colbert, 162 Va. 393, 400, 174 S.E. 660, 662 (1934)), the evidence in this case withstands that scrutiny. In Coe, our Supreme Court found that there was sufficient evidence to support the trial court's finding that wife was engaged in post-separation adultery based on husband's testimony that he observed another man's car at his wife's home on several occasions, and the testimony of a private investigator hired by husband who also observed wife's car parked over night in the guest parking place at her paramour's apartment complex. Coe, 225 Va. at 621, 303 S.E.2d at 926-27. We later noted that Coe, like this case, involved "covert meetings with [an] individual[] to whom the spouse was not married [for which] the evidence provided no reasonable explanation . . ." other than an adulterous relationship. Hughes v. Hughes, 33 Va. App. 141, 150, 531 S.E.2d 645, 649 (2000).

Furthermore, wife presented more than just the detective's report in order to prove adultery. Most tellingly, both Arnold and husband's own statements that they traveled together, the facts concerning their trip to the Homestead, and their admissions that they spent the night together in the same bed all support the trial court's finding of adultery. We also note that

- 14 -

neither husband nor Arnold took the opportunity to assert an innocent explanation for their behavior when the opportunity arose to do so. See Hughes, 33 Va. App. at 150, 531 S.E.2d at 649 ("In determining whether clear and convincing evidence supports a finding of adultery, the Supreme Court and this Court have consistently reviewed the record to determine not only whether the evidence merely established suspicious conduct, but also whether a credible explanation existed for the circumstances."); see also Watts v. Watts, 40 Va. App. 685, 695-96, 581 S.E.2d 224, 229 (2003) ("Here, husband acted covertly and provided no plausible explanation for his clandestine meetings with [his paramour].").

Based on the evidence, we cannot say that the trial court's finding that husband committed adultery with Arnold is unsupported by the evidence and we affirm the trial court.

IV. EQUITABLE DISTRIBUTION

Husband challenges several aspects of the trial court's equitable distribution, including the trial court's treatment of the parties' real and personal property, post-separation debts, and investment accounts. While we do not address each argument separately, we reverse the trial court's equitable distribution determination in whole. We do so because the equitable distribution order, which is part of the final decree of divorce, is so unclear that we cannot determine from its four corners how precisely the marital estate was classified, valued, or distributed.

We come to this decision even though we are aware that our applicable standard of review gives considerable deference to the discretion of the trial court in equitably dividing the marital estate:

> Unless it appears from the record that the trial judge has abused his discretion, that he has not considered or has misapplied one of the statutory mandates, or that the evidence fails to support the findings of fact underlying his resolution of the conflict in the equities, the equitable distribution award will not be reversed upon appeal.

Blank v. Blank, 10 Va. App. 1, 9, 389 S.E.2d 723, 727 (1990). However, a trial court "'speaks through its orders and those orders are presumed to accurately reflect what transpired'" at trial. Rose v. Commonwealth, 37 Va. App. 728, 734, 561 S.E.2d 46, 49 (2002) (quoting McBride v. Commonwealth, 24 Va. App. 30, 35, 480 S.E.2d 126, 128 (1997)). Our review of the trial court's equitable distribution order indicates that it departed from the statutory scheme for equitable distribution set forth in Code § 20-107.3.

In making an equitable distribution award, "[t]he function of the [trial court] is to arrive at a fair and equitable monetary award based on the equities and the rights and interests of each party in the marital property." Mitchell v. Mitchell, 4 Va. App. 113, 118, 355 S.E.2d 18, 21 (1987). In furtherance of that purpose, Code § 20-107.3 sets forth a specific, three-step process that trial courts must follow in dividing the property of divorcing spouses. First, according to Code § 20-107.3(A), the trial court must determine whether property is marital, separate, or a hybrid of the two:

> [T]he court . . . shall determine the legal title as between the parties, and the ownership and value of *all* property, real or personal, tangible or intangible, of the parties and shall consider which of such property is separate property, which is marital property, and which is part separate and part marital property in accordance with subdivision A 3.

(Emphasis added). Second, the trial court must value the property, either as of the date of the evidentiary hearing or, upon motion of the parties, a different date. Code § 20-107.3(A). Finally, the trial court must distribute the parties' property in accordance with Code § 20-107.3. See Marion v. Marion, 11 Va. App. 659, 665, 401 S.E.2d 432, 436 (1991).

The trial court's equitable distribution order failed to comply with the statute. For instance, the trial court neither classified nor valued the parties' real property. Instead, the entirety of the trial court's order as to the parties' real property merely addresses the possession and future disposition of the homes:

> The Court Orders that the parties shall continue to own both houses jointly with Mrs. Griffin residing at [marital home] and Mr. Griffin residing at [the parties' other house]. If they are ever sold, the proceeds of sale shall be divided 50/50. The parties shall each pay ½ of the total of the mortgages, real estate taxes and insurance on both houses. . . .

The trial court also classified the parties' separately titled IRA accounts as separate property, but ordered that the IRAs "should be added up and then equalized." However, according to Code § 20-107.3(C), "the court shall have no authority to order the division or transfer of separate property . . . ." Moreover, the court ignored the parties' personal property. "The equitable distribution statute . . . is intended to recognize a marriage as a partnership and to provide a means to equitably divide the wealth accumulated during and by that partnership." Williams v. Williams, 4 Va. App. 19, 24, 354 S.E.2d 64, 66 (1987). Because the trial court did not follow the three-step process set forth in Code § 20-107.3, it is impossible to determine whether the wealth accumulated during the parties' marriage was divided in a manner consistent with the policy embodied in the statute. Accordingly, we reverse and remand for a new equitable distribution determination.

## V. SPOUSAL SUPPORT

According to Code § 20-107.1(E)(8), one of the factors the trial court must take into consideration in determining spousal support is "[t]he provisions made with regard to the marital property under [Code] § 20-107.3." Because we have reversed the trial court's equitable distribution award, the trial court must also recalculate its spousal support award in light of the new equitable distribution award it is required to make.[4]

---

[4] While we need not address the merits of husband's contention that the trial court erred by using Code § 16.1-278.17:1 as a basis for the final spousal support award, we do note that Code § 16.1-278.17:1 is limited by its own language to an award of *pendente lite* spousal support.

Wife requests an award of attorney's fees for fees incurred in the defense of this appeal.  It is well settled that:

> the appellate court [is] the proper forum to determine the propriety of an award of attorney's fees for efforts expended on appeal . . . . The appellate court has the opportunity to view the record in its entirety and determine whether the appeal is frivolous or whether other reasons exist for requiring additional payment.

O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996); see also Code § 20-99 ("Costs may be awarded to either party as equity and justice may require.").  Because we have held that many of husband's questions presented on appeal were procedurally defaulted, we direct the trial court to enter an award of attorney's fees to wife reflecting the fees incurred in defense of those defaulted issues.  See Braundau v. Brandau, 52 Va. App. 632, 642-43, 666 S.E.2d 532, 537-38 (2008); Miller v. Cox, 44 Va. App. 674, 688-89, 607 S.E.2d 126, 133 (2005).[5]

## VII.  CONCLUSION

For the reasons stated above, we affirm the trial court's decision regarding custody of the children, we affirm its decision to grant the divorce on the grounds of adultery, and we affirm its decision regarding an award of attorney's fees.  We reverse the trial court's equitable distribution and spousal support awards, and we remand for a determination of both consistent with this opinion.  On remand, the trial court shall determine the amount of attorney's fees expended by

---

[5] Although husband prevailed on several issues, we note that he did not request attorney's fees on appeal.  See Wilson v. Wilson, 25 Va. App. 752, 761, 492 S.E.2d 495, 499 (1997) ("Relief of any type will only be granted when a party specifically requests the relief in a pleading filed in the proper court.").

wife on the issues on which we affirmed as a result of husband's procedural default, and enter an award therefor.

<u>Affirmed in part, reversed in part, and remanded.</u>