COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Moon, Judges Fitzpatrick and Annunziata
Argued at Charlottesville, Virginia


MARY ANABEL McCONNELL HUGER
                                        MEMORANDUM OPINION* BY
v.    Record No. 0303-96-3         JUDGE JOHANNA L. FITZPATRICK
                                           FEBRUARY 18, 1997
GEORGE DERBYSHIRE HUGER


             FROM THE CIRCUIT COURT OF ROCKBRIDGE COUNTY
                      George E. Honts, III, Judge

            Ellen M. Arthur (Ellen M. Arthur, P.C., on
            brief), for appellant.

            Thomas C. Spencer (Spencer & Filson, P.C., on
            brief), for appellee.



     On appeal from the trial court's decision granting George

Derbyshire Huger a reduction in his monthly spousal support

obligation, Mary Anabel Huger contends that the court erred in

its determination of the husband's income for spousal support

purposes.  For the following reasons, we find no error and affirm

the judgment of the trial court.

     Throughout the history of this case, both Mary Anabel Huger

(wife) and George Derbyshire Huger (husband) contested husband's

spousal support obligation subsequent to the parties' divorce.

Specifically at issue in the instant case is husband's income

from various corporations.  Husband is the sole owner of the

Subchapter S corporation Huger Distributing Company, and the
_____

     *Pursuant to Code § 17-116.010, this opinion is not

designated for publication.

controlling shareholder of the C corporations Huger-Davidson Sale Corporation of Staunton and Huger-Davidson Sale Company.[1]

Following a modification of spousal support hearing requested by both parties, the trial court, by letter opinion dated April 12, 1994, initially denied husband's petition for a reduction and wife's petition for an increase of husband's spousal support obligation. However, by letter opinion dated April 20, 1994, the court withdrew its initial opinion and granted husband's petition for a reduction. The court determined husband's 1993 income to "approximate" $119,000 and ordered husband to pay spousal support to wife in the amount of $1,750 per month.

---

[1]"An eligible domestic corporation can avoid double taxation (once to the corporation and again to the shareholders) by electing to be treated as an S corporation under the rules of Subchapter S of the Internal Revenue Code. In this way, the S corporation passes its items of income, loss, deduction, and credits through to its shareholders to be included on their separate returns." William R. Christian, Subchapter S Taxation § 35.01 (3d ed. 1996).

The term "S corporation" means, with respect to any taxable year, a small business corporation for which an election under section 1362(a) is in effect for such year. The term "small business corporation" means a domestic corporation which is not an "ineligible corporation" and which does not have more than seventy-five shareholders, does not have as a shareholder a person (other than an estate, certain trusts, and certain organizations) who is not an individual, does not have a nonresident alien as a shareholder, and does not have more than one class of stock. See 26 U.S.C.A. § 1361(a) and (b).

The court issued yet another letter opinion on May 11, 1994, amending its previous opinion of April 20, 1994. The court reiterated that a change in husband's circumstances "justifie[d] a decrease in spousal support" and ordered spousal support in the amount of $2,200 per month. However, the court again revised its ruling by letter opinion dated August 15, 1994, and confirmed its previous order setting spousal support at $1,750 per month.[2] The court found in an order dated October 19, 1994:

> Upon consideration whereof, it is hereby ordered for the reasons set forth in this Court's Letter Opinion dated August 15, 1994 and this Court's Letter Opinion dated April 20, 1994, that the Petition of the [husband] for a reduction in spousal support is well-founded and that commencing with June 1, 1994, the spousal support shall be the sum of $1,750 per month.

This order was unappealed and became final.

The court held another support modification hearing on November 22, 1995 at the husband's request for a reduction and at wife's later request for an increase. Following the hearing, the court issued a letter opinion on December 1, 1995. The court

---

[2]The court, in its May 11, 1994 letter opinion, included $34,650 of investment income in its calculation of husband's income. The court reversed this finding in its August 15, 1994 letter, stating that it could "find no basis for adding $34,650 to Derbyshire income figures. To have done so was error and it is removed from consideration."

3

determined, "[u]pon review of the evidence . . . including the current status of the parties and the historical data accumulated over the years," husband's income to be "$97,500 or $8,092 per month, down seventeen percent from the last review."  The court declined to consider "undistributed, after-tax retained [funds] in the Sub-Chapter S Corporation and liquid assets in the other corporations as being available as income to husband."  The court denied an increase in spousal support for wife and granted further reduction in husband's spousal support payments due to a change in his circumstances.  The court denied wife's motion to reconsider, and entered its final order on January 17, 1996, awarding wife spousal support in the amount of $1,250 per month.

**I.**

On appeal, wife argues three assignments of error in the trial court's determination of husband's income.  Wife first contends that the court erred in refusing to consider the retained earnings of husband's Subchapter S corporation as income to husband.  Wife argues that, for purposes of spousal support, the court should have included the retained earnings of husband's Subchapter S corporation in its calculation of husband's income.[3]

_____

[3]"Retained earnings accounts contain any accumulated earnings and profits (E&P) of the corporation.  If the corporation has accumulated earnings and profits, it must maintain separate accounts for previously taxed income (PTI) and the accumulated adjustments account (AAA)."  Christian, supra, at

"The trial court's factual findings must be accorded great deference." Gamer v. Gamer, 16 Va. App. 335, 345, 429 S.E.2d 618, 625 (1993). "'The findings of a trial court after an ore tenus hearing should not be disturbed on appeal unless they are plainly wrong or without evidence to support them.'" Street v. Street, Record No. 2363-95-4, slip. op. at 11 (Va. Ct. App. Jan 21, 1997) (quoting Schweider v. Schweider, 243 Va. 245, 250, 415 S.E.2d 135, 138 (1992)). "The weight to be given evidence and the resolution of conflicts in the evidence are for the fact finder. We cannot disturb a chancellor's finding of fact so long as it is supported by credible evidence." Gamer, 16 Va. App. at 345, 429 S.E.2d at 625 (citations omitted).

The record demonstrates that the trial court considered the retained earnings of the Subchapter S corporation as income to the husband, but only as income in 1993, the year in which the income was earned. At the November 22, 1995 hearing, the court referred to the S corporation's funds and classified it as "income that would be reflected in prior statements subject to prior hearings." (Emphasis added). Additionally, wife's expert Certified Public Accountant, Bruce Blyer, testified regarding husband's reported income. He stated that husband's income from the S corporation was "properly reported" and that he "saw no evidence that [husband] did anything wrong." Husband's 1994

_____

§ 35.01.

5

Individual Income Tax Return reflects income of $22,557 from "[r]ental real estate, royalties, partnerships, S corporations, trusts, etc."  Lastly, the court's December 1, 1995 letter opinion also indicates that the court considered the Subchapter S corporation's earnings:

> [Wife] urges . . . the court to consider undistributed, after-tax [funds] retained in the Sub-Chapter S Corporation and liquid assets in the other corporations as being available as income to [husband]. . . . Finding none of the funds retained excessive in relation to the size of the various corporations, this court will not impose its judgment on what should be retained by the corporations over the sound judgment of managers, including [husband], of the corporations.
>
> Upon review of the evidence before me, including the current status of the parties and the historical data accumulated over the years, the Court finds:  . . . [Husband's] income is determined to be $97,500, or $8,092 per month, down seventeen percent from the last review.
>
> *    *    *    *    *    *    *
>
> [Wife] is not entitled to an increase in spousal support; [Husband] is entitled to a reduction in his spousal support payments due to a change in his circumstances.
>
> Accordingly, the court determines [wife] is entitled to spousal support in the sum of $1,250 per month.

(Emphasis added).

Thus, although the court did not specifically itemize the different sources of funds that comprised husband's total income, the testimony and the court's December 1, 1995 letter opinion

demonstrate the court's consideration of these funds, including
"after-tax [funds] retained in the Sub-Chapter S Corporation."
After evaluating the evidence, the court declined to include as
income the Subchapter S corporation's retained earnings that had
been considered earlier in establishing the amount of husband's
income at the prior support hearings.  The court's calculation of
husband's income is not plainly wrong or without evidence to
support it.[4]

## II.

Additionally, wife argues that the trial court erred in
failing to include in its calculation of husband's income loans
from husband's Subchapter S corporation that he deposited into
his personal account.  Wife contends that the loans husband

---

[4]Husband does not dispute that retained earnings may be
considered as income in a determination of spousal support.
However, he contends that this income was considered previously
by the trial court in setting his earlier support obligation of
$2,750.

At the November 22, 1995 hearing, husband's counsel
represented to the court, "[W]e agree that the Sub-S corporation
certainly has a value in its assets.  But as Your Honor knows
 . . . that income is entered -- is put on [husband's] 1040,
whether it comes through on a W-2 or comes through on a Schedule
E."  Wife's counsel argued that the retained earnings of the
 S corporation, as "an asset or a resource that is liquid, it
certainly is available to him as income."  However, the trial
court agreed with husband's argument:  "Not as income.  It's
available . . . . We stipulate that it's an asset.  He could
liquidate the corporation and get money out of it.  It is not,
however, income in any way, shape, or form, by anybody's
testimony."

7

received in 1994 and 1995 must be considered income, alleging that these loans were used for husband's personal expenses. However, as decided above, the record supports the trial court's determination of husband's income.

At the November 22, 1995 hearing, Blyer testified that according to his examination of the records regarding the Subchapter S corporation, all the S corporation's income was reported on husband's personal tax return. Blyer further stated that he found no intercompany transfers of funds between the Subchapter S corporation and the C corporations. Finally, Blyer testified that he found nothing that was reported incorrectly on husband's corporate tax returns or on his individual tax returns.

Husband acknowledged that he deposited additional funds in his personal checking account including one deposit of approximately $80,000, which was a loan he took from the Subchapter S corporation. He testified that the purpose of this loan was to pay a mortgage on rental property. The evidence established that the loan was reflected by a "note receivable to stockholder" and by other indicia of husband's obligation to repay. The court specifically determined that this money was from the Subchapter S corporation, and was not present income, but rather "income that would be reflected in prior statements subject to prior hearings." (Emphasis added). For the reasons stated above, we cannot say that the trial court abused its discretion or was plainly wrong in excluding the loans contested

8

by wife from its calculation of husband's present income.

**III.**

Lastly, wife argues that the trial court erred in failing to impute income to husband as a "matter of fact," because husband deposited funds in his personal checking account exceeding his reported income.  Wife contends that funds in excess of husband's reported income of $97,500 passed through husband's personal checking account and that these funds should have been included in the court's determination of husband's income.

"'[A] trial court may impute income based on evidence of recent past earnings.'"  Stubblebine v. Stubblebine, 22 Va. App. 703, 709, 473 S.E.2d 72, 74 (1996) (quoting Brody v. Brody, 16 Va. App. 647, 651, 432 S.E.2d 20, 22 (1993)).  "In deciding whether to impute income, the court 'must look to current circumstances and what the circumstances will be "within the immediate or reasonably foreseeable future."'"  Theismann v. Theismann, 22 Va. App. 557, 573, 471 S.E.2d 809, 816–17, aff'd, ___ Va. App. ___, ___ S.E.2d ___ (1996) (en banc) (quoting Srinivasan v. Srinivasan, 10 Va. App. 728, 735, 396 S.E.2d 675, 679 (1990)).  Trial courts must exercise their discretion in determining whether income should therefore be imputed.  See, e.g., Reece v. Reece, 22 Va. App. 368, 376, 470 S.E.2d 148, 152 (1996).

Witness credibility determinations rest within the chancellor's sound discretion and will not be disturbed on appeal

absent plain error or an abuse of discretion.  See Goodyear Tire & Rubber Co. v. Pierce, 5 Va. App. 374, 381, 363 S.E.2d 433, 437 (1987).  Where the chancellor is confronted with conflicting testimony from interested witnesses on each side of the case, it is in his province alone, as fact finder, to assess the credibility of the witnesses and the probative value to be given their testimony.  See Richardson v. Richardson, 242 Va. 242, 246, 409 S.E.2d 148, 151 (1991).  We will reverse a chancellor's factual determinations based on ore tenus evidence only if they are plainly wrong or without evidence to support them.  Id.

Thus, the trial court had discretion to believe or disbelieve husband's explanation for these deposits.  The trial court accepted husband's testimony regarding the deposits into his personal account as being loans and not income, and determined that husband's testimony was credible.  The evidence presented in this case supports the trial court's decision not to impute income, and this decision was not clearly wrong or an abuse of discretion.

Affirmed.

10