COURT OF APPEALS OF VIRGINIA

Present:  Judges Coleman, Bumgardner and Lemons


DONALD NIXON CLINE

MEMORANDUM OPINION[*] BY
v.    Record No. 0766-98-3          JUDGE DONALD W. LEMONS
                                         JUNE 29, 1999
SHARON ELIZABETH CLINE


FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
Dennis L. Hupp, Judge

(Dawn Wine Ruple; Dawn Wine Ruple, P.C., on
briefs), for appellant.  Appellant submitting
on briefs.

(William H. Ralston, Jr.; Miller, Ralston &
Earle, P.L.L.C., on brief), for appellee.
Appellee submitting on brief.


Donald Nixon Cline appeals the order of the Rockingham

Circuit Court with respect to its equitable distribution order,

its refusal to make a reservation of future spousal support to

him, its determination of his gross income, and its order that

he pay attorney's fees to Sharon Elizabeth Cline.  We hold that

the circuit court erred in refusing to make a reservation of

future spousal support, and we reverse on that basis.  We affirm

all other portions of the order.

---

     *Pursuant to Code § 17.1-413, recodifying Code § 17-116.010, this opinion is not designated for publication.

## I.  BACKGROUND

Donald Nixon Cline (husband) and Sharon Elizabeth Cline (wife) were married on June 24, 1989.  The parties had one child born of the marriage, Katy Rose Cline, born on February 8, 1991. On February 21, 1996, the parties separated.  On February 26, 1996, the husband filed a bill of complaint seeking a divorce from the wife.  On March 13, 1996, the wife filed an "answer and cross bill" seeking a divorce from the husband.

On March 14 and 15, 1996, a pendente lite hearing was held to determine issues of temporary child custody and support, temporary spousal support, and attorney's fees and costs.  By order dated April 11, 1996, the court gave the wife pendente lite custody of the child.  The matters of pendente lite child support, pendente lite spousal support, attorneys' fees and costs were continued to a hearing held on June 20, 1996.  An additional hearing was held on August 14, 1996, and on August 21, 1996 a telephonic conference was held.  By letter opinion dated September 12, 1996, the court found that the husband's monthly income was $2,117.  The court found that the wife's income was $811.00 per month and ordered the husband to pay $180 per month in pendente lite spousal support.  The court ordered the husband to pay $163 per month in child support, retroactively effective on August 1, 1996.  The court awarded $1,600 in pendente lite attorney's fees to the wife, to be paid

-

by December 31, 1996.  On January 6, 1997, the husband filed a motion for reconsideration, which the court denied.

On April 23, 1997, a consent order was entered granting the husband's motion to amend his bill of complaint to include an award of spousal support or a reservation of his right to receive spousal support in the future, if the court did not award it at the final hearing set for July 3, 1997.  The July 3, 1997 hearing, held for the purpose of addressing all remaining matters of divorce grounds, spousal support, child support, equitable distribution and attorneys' fees, was continued to August 12, 1997.  The August 12, 1997 hearing was held, and the court again continued the case until September 4, 1997.  On August 15, 1997, the husband was granted a divorce decree based upon separation of more than one year, but the court reserved its ruling on the matters set for the September 4, 1997 hearing.

In its "memorandum" dated November 24, 1997, and its "memorandum-addendum" dated December 1, 1997, the court resolved all disputed issues of classification and valuation of property remaining from the hearings of August 12 and September 4, 1997. On February 6, 1998, the husband filed a motion for reconsideration, and a hearing was held on the same day.  By letter opinion dated February 13, 1998, the court refused to modify any of its earlier rulings.  A decree resolving all matters upon which the court had previously reserved ruling was entered on February 27, 1998.

-

## II. EQUITABLE DISTRIBUTION

On appeal, the husband argues that the trial court erred in the classification and valuation of several items of personal property. Pursuant to Code § 20-107.3(A), upon decreeing a divorce, a court may:

> determine the legal title as between the parties, and the ownership and value of all property, real or personal, tangible or intangible, of the parties and shall consider which of such property is separate property, which is marital property, and which is part separate and part marital property . . . . The court shall determine the value of any such property as of the date of the evidentiary hearing on the evaluation issue.

The court also has the power to apportion marital debt according to factors that include "the debts and liabilities of each spouse, the basis for such debts and liabilities, and the property which may serve as security for such debts and liabilities." Code § 20-107.3(E)(7). "[D]ecisions concerning equitable distribution rest within the sound discretion of the trial court and will not be reversed on appeal unless plainly wrong or unsupported by the evidence." McDavid v. McDavid, 19 Va. App. 406, 407-08, 451 S.E.2d 713, 715 (1994).

### A. Nationsbank Overdraft Protection Account

At the hearing on August 12, 1997, the husband testified that a debt of $1,802.03 was owed in an overdraft protection account attached to a joint checking account held by the parties during the marriage. The wife testified that although she wrote

-

checks during the marriage, she had no knowledge of the existence of the overdraft protection account, and that she did not even know that this type of account existed. The wife stated that the husband had the only key to the mailbox and "[he] would not allow me to have a key to the mailbox. He always got the mail and he took care of whatever bills there were." The wife stated that although she had access to a checkbook, the husband "would keep the only ledger." She testified, "[e]very time I wrote a check, I needed to tell him, if it was for any reason. . . . I did tell him every time I wrote a check because I had no access to the ledger. I didn't know what he - what we didn't have. I had to have, as he said in his deposition, his approval or his authorization is what he said for anything . . . other than just gas and food."

In its memorandum of November 24, 1997, the court stated "I find that the Nationsbank Overdraft Protection account is not marital debt. The Wife did not know of the existence of this account. The Husband controlled the family finances and specifically the checkbook. I will not saddle the Wife with the Husband's mismanagement."

In determining the allotment of marital debt generally, "[t]he purpose and nature of the debt, and for and by whom any funds were used, should be considered in deciding whether and how to credit or allot debt." Gamer v. Gamer, 16 Va. App. 335, 341, 429 S.E.2d 618, 623 (1993). Further, in making an

-

equitable distribution award, the court must determine "how much of the debt was incurred prior to the dissolution of the marriage or the basis for such debts and liabilities. . . ." Stumbo v. Stumbo, 20 Va. App. 685, 693, 460 S.E.2d 591, 595 (1995) (citations omitted).

Code § 8.01-680 states, "the judgment of the trial court shall not be set aside unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it." Here, the husband testified that a debt existed in the overdraft protection account attached to a marital checking account. The husband did not introduce evidence to show which checks had caused the overdraft. Neither did he produce any evidence to show that the checks were written for marital purposes. Throughout the marriage, the husband had complete control of all financial affairs. The wife testified that she had no knowledge that the overdraft account existed. Based upon the evidence, we cannot say that the court's judgment was plainly wrong or without evidence to support its classification of the overdraft protection account as the husband's separate debt, and we affirm the court's findings.

## B. 1992 Honda Accord

In its Memorandum of November 24, 1997, the court classified the parties' 1992 Honda Accord as part marital property and part separate property of the wife, and awarded the car to the wife. The husband argues that the court erred in

-

failing to consider uncontested evidence that traced his separate property in the Honda.  We hold that the trial court did not err, and we affirm the findings of the trial court with respect to the Honda.

At the hearing on August 12, 1997, the husband testified that prior to the marriage, he purchased a 1985 Chevrolet Cavalier black convertible from the wife's uncle.  In 1991 or 1992, the husband stated that he traded the convertible to his cousin, Bonnie Nicholas, in exchange for her 1984 Chevrolet Cavalier mauve convertible and $1,500 cash.  An affidavit from Nicholas was received into evidence, without objection, that supported the terms of the trade described by the husband.  The husband testified that he traded the 1984 convertible and the $1,500 as a down payment on a 1992 Honda Accord, owned by the parties at the time of their separation.  The husband testified that both parties made payments on the Honda until February 1996.

The wife testified that the Honda was purchased in November 1992, during the marriage, and that "from the time of its purchase until the separation, the payments were made with marital funds."  The wife stated that she took the car upon the separation, and that she had made all of the payments since the date of the separation.

On appeal, the husband argues that the trial court was not entitled to disregard his testimony tracing his separate

-

property interest in the Honda. The husband contends that the wife did not contradict his testimony. The husband also stated that the admission of Bonnie Nicholas' affidavit had not been contested by the wife. The husband argues that although the trial court is permitted to resolve conflicts in testimony, it may not arbitrarily disregard uncontroverted testimony supported by an affidavit.

In Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 279, 348 S.E.2d 876, 877 (1986) we stated, "[t]he trier of fact must determine the weight of the testimony and the credibility of the witnesses, but it may not arbitrarily disregard uncontradicted evidence of unimpeached witnesses which is not inherently incredible and not inconsistent with facts in the record." Here, the court found that the credibility of the husband had been impeached. In its memorandum of November 24, 1997, the court stated, "[i]n resolving the various issues, I must weigh the credibility of the parties where corroboration is lacking. The Husband's credibility has been damaged in my view for several reasons." The court articulated the husband's denial of his sexual preference in spite of a great amount of evidence to the contrary, his testimony regarding his "income level, family loans and vehicle valuation [which was] materially at odds with a loan application he filled out, signed and submitted to his banker," and "numerous discrepancies" between the acquisition dates the husband supplied to his insurance

-

agent in making a fire-loss claim and the dates to which he

testified, as reasons that the husband's credibility had been

impeached.  In addition, Nicholas' affidavit does not

corroborate that the husband's separate property was used as a

down payment on the Honda.  The court was left to determine the

validity of the husband's argument regarding his separate

property on his testimony alone.  The court stated in its

memorandum dated November 24, 1997:

>    The parties own a 1992 Honda
> automobile, which is jointly-titled.  It was
> acquired in December 1992.  The parties
> obtained a loan in the amount of $13,689.00
> for the purchase of this automobile.  I am
> not satisfied with the Husband's evidence
> tracing his separate property into the
> acquisition of this vehicle.  At the time of
> separation, the loan balance was $6,064.50.
> At the time, the payments for December,
> 1995, and January and February, 1996, were
> due.  The balance of the loan as of the date
> of the hearing was $1,323.05.  The first
> payment under the loan had been due in
> February, 1993.  It appears to me that the
> parties paid thirty-three (33) installments
> during the marriage and that, as of the
> hearing date, the wife had made twenty-two
> (22) installments since the separation.
> Both parties agree that the vehicle is worth
> $8,925.00, meaning that the equity in the
> vehicle is $7,601.50 as of [the] hearing
> date.  I find this vehicle to be
> part-marital property, the marital value
> being $4,561.00, and part separate property
> of the Wife, this value being $3,040.00.
> This vehicle is awarded to the Wife and the
> Husband shall convey title to her.  She
> shall be responsible for the remaining five
> (5) installments on the car loan.

-

We hold that the trial court did not err in its determination that the husband failed to adequately trace his separate property in the Honda.  The husband's credibility was impeached and his testimony was uncorroborated, and the court was entitled to find that the 1992 Honda was partially marital property and partially the separate property of the wife.

### C.   The Wenger Debt

The husband testified that during the marriage he had borrowed money from Harry Wenger.  The husband offered an exhibit prepared in support of his testimony, but tendered no written documentation of the loan.  The husband testified that the majority of the debt had been incurred more than three years prior to the hearing and that no written contract supported its existence.

Pursuant to decreeing a divorce, a court has the ability to apportion marital debt.  See Code § 20-107.3(E)(7).  In Virginia, a party must bring an action to enforce an unwritten contract, express or implied, within three years.  See Code § 8.01-246(4).  In its memorandum, the court observed that the husband had not listed the Wenger loan on his bank loan application.  The court found that the existence of the debt was uncorroborated and was unenforceable against either the husband or the wife.  The court concluded, "[c]ertainly as to the Wife, the statute of limitations would have run, and most likely to the Husband as well.  Since the Wife would have no legal

-

obligation for the bulk of this indebtedness, I will not impose such an obligation on her in making equitable distribution." Based upon the evidence, we hold that the court did not err in finding that the alleged Wenger indebtedness was not marital debt.

### D.   Personal Property Destroyed in the Fire

In February 1997, a fire occurred in the former marital home.  For purposes of filing an insurance claim, the husband completed a seventy-five-page "Personal Property Inventory Form," enumerating items destroyed in the fire.  Pursuant to the inventory form, the husband listed the number of items lost in the fire in detail, including the quantity of the item, its description, the date of its purchase, and its current replacement cost.  On appeal, the parties disputed the classification of the items of personal property destroyed in the fire.

At the hearing held on August 12, 1997, the husband testified that the acquisition dates were inaccurate, stating "I just glanced through [the list] at the item and put down what I thought would be reasonable, but I didn't have to give it a lot of thought."  The wife did not contest the acquisition dates of the property listed on the inventory form which was submitted to the insurance company.  The court accepted the wife's position stating,

-

The Husband submitted an itemized inventory form to the insurance company setting forth the date of the purchase for each item and the "current replacement cost" of each item. The aggregate of these totaled $76,060.00. The policy limit was $69,750 which was paid by the insurance company. Hence, the insurance company paid 91.7% of the total replacement cost claimed by the Husband.

I have reviewed the itemized inventory (Plaintiff's Exhibit #24) and have classified each item as marital or separate property. Rather than set forth these items ad nauseum herein, I simply make reference to Plaintiff's Exhibit #24 where I have noted the classification. . . . [I]n doing so, I find the total value of the marital property to be $39,607.40. The Wife's separate property totals $164.00. The Husband's separate property totals $36,288.60.

Applying the percentage identified above (91.7%), $36,320.00 of the proceeds [$69,750 paid by the insurance company] is marital property subject to division by the Court.

On appeal, the husband argues that the trial court erred in accepting his inventory list as the proper acquisition dates of the property destroyed in the fire. The husband contends that his testimony at trial was "more deliberate and therefore more accurate than the original hasty listing." He argues that if the court had accepted his testimony at trial over the dates on the inventory list, "the proper marital interest was . . . only $22,110.75."

"Generally, the character of property at the date of acquisition governs its classification pursuant to Code § 20-107.3." Stratton v. Stratton, 16 Va. App. 878, 881, 433

-

S.E.2d 920, 922 (1990).  In its memorandum of November 24, 1997,

the court stated:

> [there were] numerous discrepancies between
> acquisition dates given to [the husband's]
> insurance agent in making a fire-loss claim
> and those given in his testimony before the
> Court.  While . . . [the husband] may not
> have been overly concerned about the
> accuracy of this information on the
> insurance form because his total claim
> exceeded the policy limit, the discrepancies
> were fairly wide-ranging at times which. . .
> reflects upon his credibility and affects
> the weight to be given to his testimony in
> this regard.

The court based its classification of the personal property

lost in the fire upon the acquisition dates listed on the

"Personal Property Inventory Form" submitted by the husband to

the insurance company.  The inventory form was prepared in

furtherance of an insurance claim.  It extensively detailed the

personal property lost in the fire and identified the

acquisition date of each item.  Based upon this evidence, we

hold that the court did not err in determining that $36,320

worth of marital property was destroyed in the fire.

E.  The Parties' Automobiles

At the time of the separation and upon the date of the

hearing, three vehicles remained in the husband's possession

that the court classified as marital property.  These included a

1986 Isuzu pick-up truck, a 1988 Plymouth Voyager, and a 1989

Dodge Ram.  On appeal, the parties do not disagree over the

classification of the vehicles as marital property, but do dispute their total value as assessed by the court.

At the hearing held on August 12, 1997, the husband testified that the value of the Isuzu pick-up truck was $1,800. He stated that the Plymouth Voyager was worth $1,750 and that the Dodge Ram had a value of $3,950. The husband testified that his valuations were based upon the NADA Blue Book estimates, minus deductions for mileage and the condition of the vehicles. The wife introduced the husband's loan application with F & M Bank signed by him on May 7, 1997, in which he had valued the same three vehicles. In the loan application, the husband assessed the value of the Isuzu pick-up truck as $1,800, the Plymouth Voyager as $5,000, and the Dodge Ram as $5,000. In its Memorandum of November 24, 1997, the court accepted the higher valuation of the Plymouth Voyager and the Dodge Ram used by the husband on his loan application.

On appeal, the husband argues that the court should have accepted the NADA estimates as the controlling value of the automobiles, minus deductions for the mileage and condition of the car, as he testified at trial. Code § 8.01-419.1 states,

> Whenever in any case not otherwise specifically provided for the value of an automobile is in issue, either civilly or criminally, the tabulated retail values set forth in the National Automobile Dealers' Association (NADA) "yellow" or "black" books, in effect on the relevant date, shall be admissible as evidence of fair market value on the relevant date.

-

> The determination of value shall be subject to such other creditable evidence as any party may offer to demonstrate that the value as set forth in the NADA publication fails to reflect the actual condition of the vehicle and that therefore the value may be greater or less than that shown by the NADA publication.

In valuing the three vehicles, the court was entitled to weigh the credibility of the witnesses and to determine appropriate vehicle valuations according to the evidence. In its November 24, 1997 memorandum, the court stated "[w]hile the husband testified as to the value of each vehicle at trial, his loan application lists much higher values." Based upon the husband's loan application signed by him approximately three months prior to the August 12, 1997 hearing date, we find that the court had a sufficient basis upon which to vary from the NADA estimates, and to value the vehicles at a total of $11,800, and we uphold the findings of the trial court with respect to the three vehicles.

### III. HUSBAND'S CREDIT FOR MARITAL DEBT

The husband requested that he be given credit for the repayment of marital debts that he claimed had been satisfied by his post-separation separate property income. The husband alleged that during the marriage, while the parties were operating the "Hinton Market," a convenience store owned as marital property, the parties had borrowed money from various sources, including family members. The parties agreed that they

-

owed a total of $19,336.26 at the time of their separation. The husband stated that the store had been started with $10,000 from his father, rendering the store partially the husband's separate property. The husband claims that he paid all marital debt during the separation period. The husband also claims that he sold the store back to its original owner in exchange for the original owner's agreement to assume responsibility for $18,000 in store-related debt. The husband asserts that because the sale of the store, which he claimed was partially separate property, was used to satisfy the marital debt during the post-separation period, he utilized separate property to reduce marital debt.

On appeal, the husband argues that the court should have credited him for these payments in dividing the marital estate. The wife argues on appeal that the husband's "mismanagement" of the store had caused the debt both during the marriage and after the parties separated. In its memorandum of November 24, 1997, the court refused to consider the husband's repayment of alleged marital debt in dividing the marital estate, stating:

> The parties ran two businesses. In March of this year, the Hinton Market was sold back to [the original owner] for the balance of the outstanding indebtedness owed him. In other words, the debt was cancelled as consideration for the conveyance. The store was marital property, and the debt was marital as well. The Husband did this unilaterally, the responsibility of running the store having fallen to him when the Wife

-

> left.  I find that Husband committed no waste in making this conveyance. . . .

With respect to the family debts claimed by the husband, the court stated,

> I find these [debts] to be gifts to the Husband.  There are no repayment or interest provisions, meaning that these lack the normal indicia of indebtedness.  There is no written evidence of such loans.  Further, in filling out his application for a bank loan, the Husband did not list these as loans.  Although [testimony was introduced] that omitting family loans on bank application is common, it does not make it right or correct.  I cannot imagine that the bank would not be interested in knowing the extent of family indebtedness owed by a prospective borrower.  These are not marital debts nor are they the separate debts of the husband.

Based upon the evidentiary findings of the court, we cannot say that the court erred in finding that any marital debt in the store had been cancelled by the husband's sale of the store back to its original owner and that the alleged loans incurred by the husband did not constitute marital debt.  We uphold the court's finding that the husband was not entitled to credit for his alleged repayment of marital debt.

IV.  FAILURE TO RESERVE JURISDICTION FOR FUTURE
     AWARD OF SPOUSAL SUPPORT TO HUSBAND

On April 23, 1997, the court entered a consent decree to allow the husband to amend his prayer for relief in his bill of complaint to request that the court reserve jurisdiction to award him spousal support.  In its letter opinion dated February

-

23, 1998, the court refused to grant spousal support to the husband and also refused to make a reservation for a future determination of spousal support.

On appeal, the husband argues that the court erred in refusing to grant his request for a reservation of the right to spousal support. Citing D'Auria v. D'Auria, 1 Va. App. 455, 340 S.E.2d 164 (1986) and Bacon v. Bacon, 3 Va. App. 484, 351 S.E.2d 37 (1986), the husband contends that it is reversible error for the court to refuse to include a reservation of jurisdiction over spousal support if requested by either party. In D'Auria, the wife appealed from a divorce decree that found that she had willfully deserted her husband, arguing in part that the court erred in refusing to grant her spousal support. The husband cross-appealed, arguing in part that the trial court erred in failing to reserve his right to petition for spousal support.

With respect to the husband's appeal in D'Auria, we acknowledged that "[a] court of equity has power by a proper reservation to change or modify its decree as to spousal support." Id. at 462, 340 S.E.2d at 168. However, "[t]he reservation of jurisdiction to change such a decree must be clear and specific." Id. at 462, 340 S.E.2d at 168. Holding that the husband had not expressly requested that the trial court reserve his right to future spousal support, we affirmed the decision of the trial court. See id. at 462, 340 S.E.2d at 168.

-

In Bacon, the court refused to grant the wife's request for a reservation of spousal support on the grounds that her fault prohibited it. We held "[f]ault in the breakup of a marriage, or the lack thereof, is a factor that the trial court must consider in making an equitable distribution award and may affect a spousal support award." Id. at 490, 351 S.E.2d at 41. We reversed, stating, "[s]ince there was no finding of fault on Mrs. Bacon's part which would have allowed the trial court to have awarded Mr. Bacon a decree of divorce, there was no bar to Mrs. Bacon's right to receive spousal support." Bacon, 3 Va. App. at 491, 351 S.E.2d at 41. In holding that the wife was entitled to a reservation of the right to spousal support, we stated, "[w]here there is no bar to the right of spousal support, it is reversible error for the trial court, upon request of either party, to fail to make a reservation in the decree of the right to receive spousal support in the event of a change of circumstances." Id. at 491, 351 S.E.2d at 41.

The court found that the husband was barred from seeking spousal support on the basis of the short duration of the marriage and its consideration of the other "statutory factors" stating,

> The Husband's claim for spousal support is denied. In reviewing the statutory factors, it is clear that the Husband is not entitled to an award of spousal support. Given the short duration of the marriage, I also do not believe that the Husband should be heard later on this issue. There will be no

-

reservation for future spousal support determination for the Husband.

The court mistakenly applied Code § 107.1(E) to determine whether the husband was entitled to request a reservation of the right to spousal support.  The record does not reflect any bar to the right to request a reservation of spousal support.  Failure to reserve the husband's right to spousal support was error.  See Bacon, 3 Va. App. at 491, 351 S.E.2d at 41.

## V.   ACTUAL INCOME OF THE HUSBAND

In its November 24, 1997 Memorandum, the court erroneously stated that it was "imputing" income to the husband in the amount of $2,400 per month.  In its response to the husband's motion for reconsideration, the court clarified that it found that the husband's actual income was $2,400, and that it had mistakenly used the word "imputed."  On appeal, the husband argues that the court erred in finding that his actual monthly income was $2,400.

"We will reverse the trial court only when its decision is plainly wrong or without evidence to support it."  Moreno v. Moreno, 24 Va. App. 190, 195, 480 S.E.2d 792, 794 (1997) (citations omitted); see Code § 8.01-680.  At the hearing of August 12, 1997, the husband testified that his gross income was between $2,150 and $2,580 per month, but that this amount did not include deductions for the expenses of operating his taxi business.  The wife introduced the husband's loan application to

-

F & M Bank, signed by the husband, in which he stated that his income was $2,400 per month. The husband did not introduce any tax returns or business records to contradict the income amount he specified on the loan application.

On appeal, the husband argues that the court erred in relying upon the loan application, stating that the $2,400 amount was before all reasonable business expenses had been deducted. The husband contends that his income, after business expenses, is approximately $2,117 per month, the amount awarded by the court as temporary spousal support. Based upon the loan application and the husband's testimony, we hold that the court had sufficient evidence to find that the husband's gross income was $2,400 per month, and we uphold its finding.

## VI. ATTORNEY'S FEES

Both the husband and the wife requested attorney's fees and costs from the other party. In its memorandum-addendum dated December 1, 1997, the court stated,

> The [husband's] motion is granted, and the Husband is awarded $449.68 from the Wife to reimburse his attorneys [sic] fees and costs incurred in filing and arguing his motion to quash a subpoena duces tecum requested after the hearing date originally scheduled. I previously granted the motion to quash. This will be offset against the award of attorneys fees and costs made hereinbelow [sic].

> \* \* \* \* \* \* \*

> In view of his separate assets and his imputed income level, the Husband has a

-

greater ability than the wife to pay attorney's fees and costs. It is also my perception that the Husband's "compulsion to control" engendered a substantial portion of the attorneys [sic] fees and costs incurred by the parties in this case. For these reasons, I will award the Wife $12,500.00 towards [sic] her attorneys [sic] fees and costs. Offsetting the above award, the balance owed by the husband is $12,050.32. The Husband shall pay this sum by March 1, 1998. Interest shall not accrue on this award until that date. Of course, if it is not paid by then, the Husband risks being found in contempt of this Court.

On appeal, the husband argues that the court erred in awarding attorney's fees to the wife. The husband contends that the court erred in assessing his ability to pay the wife's attorney's fees and that the trial court failed to cite evidence in the record to support its "perception" that the husband was responsible for the wife's attorney's fees. The husband argues that the court cannot rely upon "extrajudicial [sic] perceptions of the evidence," absent specific allegations of misconduct, to support an award of attorney's fees.

"An award of attorney's fees is a matter submitted to the trial court's sound discretion and is reviewable on appeal only for an abuse of discretion." Brooks v. Brooks, 27 Va. App. 314, 319, 498 S.E.2d 461, 463-64 (1998) (citations omitted); see also Code § 20-99(5). "Rather than following a statutory scheme, in determining whether to award attorney's fees the trial court considers the circumstances of the parties, and the equities of the entire case." Taylor v. Taylor, 27 Va. App. 209, 217, 497

-

S.E.2d 916, 919-20 (1998) (citations omitted).  The court cited the husband's "greater ability than the wife to pay attorney's fees and costs" and his "compulsion to control" which "engendered a substantial portion of the attorneys [sic] fees and costs incurred by the parties in this case" and "[had] an economic impact on the marriage in that he controlled the marital finances" as reasons underlying its award of attorney's fees.  The court also stated that the husband caused the breakdown of the marital relationship.  We do not believe that the trial court abused its discretion in ordering the husband to pay $12,050 in attorney's fees to the wife, and we uphold its award.

## VII.  CONCLUSION

Based upon the foregoing reasons, we affirm the court's equitable distribution order, its determination of the husband's gross income, and its order that the husband pay attorney's fees to the wife.  We reverse the portion of the court's order denying a reservation of spousal support to the husband and remand for an order consistent with this opinion.

Affirmed in part; reversed in part and remanded.

-